# EXHIBIT 2

**Westlaw.**

--- F.3d ----
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))
(Cite as: --- F.3d ----)

Page 1

**H**
Monsanto Co. v. Syngenta Seeds, Inc.
C.A.Fed. (Del.),2007.
Only the Westlaw citation is currently available.
United States Court of Appeals,Federal Circuit.
MONSANTO COMPANY, Monsanto Technology LLC, and Dekalb Genetics Corp., Plaintiffs-Appellants,
v.
SYNGENTA SEEDS, INC., Syngenta Biotechnology, Inc., Garst Seed Company, Golden Harvest Seeds, Inc., Garwood Seed Co., Golden Seed Company, LLC, Sommer Bros. Seed Company, Thorp Seed Co., and JC Robinson Seeds, Inc., Defendants-Appellees.
No. 2006-1472.

Oct. 4, 2007.

**Background:** Seed companies brought actions against competitor alleging infringement of patents for genetically modified corn. After cases were consolidated, the United States District Court for the District of Delaware, Sue L. Robinson, Chief Judge, 431 F.Supp.2d 482, entered summary judgment in competitor's favor, and patentees appealed.

**Holdings:** The Court of Appeals, Rader, Circuit Judge, held that:

(1) competitor did not infringe on patents by obtaining progeny, and

(2) claims in patent for genetically modified corn directed to chimeric plant gene were invalid for lack of enablement.

Affirmed.

[1] Patents 291 ⚷⇒324.5

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.5 k. Scope and Extent of Review in General. Most Cited Cases

Patents 291 ⚷⇒324.55(5)

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.55 Questions of Fact, Verdicts, and Findings
                291k324.55(5) k. Issues of Infringement. Most Cited Cases
Claim construction part of patent infringement analysis receives review as question of law, while infringement, whether literal or under doctrine of equivalents, is question of fact.

[2] Patents 291 ⚷⇒324.5

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.5 k. Scope and Extent of Review in General. Most Cited Cases

Patents 291 ⚷⇒324.55(3.1)

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.55 Questions of Fact, Verdicts, and Findings
                291k324.55(3) Issues of Validity
                    291k324.55(3.1) k. In General. Most Cited Cases
Court of Appeals reviews determinations of enablement without deference, and factual issues underlying enablement for clear error. 35 U.S.C.A. § 112.

[3] Patents 291 ⚷⇒165(5)

291 Patents
   291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
         291k165 Operation and Effect of Claims in General
            291k165(5) k. Construction of Particular Claims as Affected by Other Claims. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))
(Cite as: --- F.3d ----)

Page 2

Claim's status as dependent or independent depends on claim's substance, and not form alone. 35 U.S.C.A. § 112.

[4] Patents 291 ⚷165(5)

291 Patents
   291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
         291k165 Operation and Effect of Claims in General
            291k165(5) k. Construction of Particular Claims as Affected by Other Claims. Most Cited Cases

Claim in patent describing process of producing transgenic herbicide resistant and insect resistant corn that provided process for obtaining progeny was dependent on claim reciting process for generating original fertile transgenic plant, where claim could stand only if steps recited in prior claim had been performed. 35 U.S.C.A. § 112.

[5] Patents 291 ⚷226.8

291 Patents
   291XII Infringement
      291XII(A) What Constitutes Infringement
         291k226.5 Substantial Identity of Subject Matter
            291k226.8 k. Other Matters. Most Cited Cases

One who does not infringe independent claim cannot infringe claim dependent on, and thus containing all limitations of, that claim.

[6] Patents 291 ⚷229

291 Patents
   291XII Infringement
      291XII(A) What Constitutes Infringement
         291k228 Patents for Processes
            291k229 k. Identity in General. Most Cited Cases

For infringement of process invention, all steps of process must be performed, either as claimed or by equivalent step.

[7] Patents 291 ⚷229

291 Patents
   291XII Infringement
      291XII(A) What Constitutes Infringement
         291k228 Patents for Processes
            291k229 k. Identity in General. Most Cited Cases

Seed company did not infringe on patents for genetically modified corn by obtaining progeny from fertile transgenic plant produced by patented process, where patent owner authorized initial steps described in patents' independent claims, initial steps were performed before patent's issuance, and claim describing how to obtain progeny was dependent on those steps. 35 U.S.C.A. §§ 112, 271(a), 271(g).

[8] Patents 291 ⚷229

291 Patents
   291XII Infringement
      291XII(A) What Constitutes Infringement
         291k228 Patents for Processes
            291k229 k. Identity in General. Most Cited Cases

Infringement of multi-step method claim cannot lie by performance of single step after issuance of patent when initial steps were performed prior to issuance. 35 U.S.C.A. § 271(g).

[9] Patents 291 ⚷99

291 Patents
   291IV Applications and Proceedings Thereon
      291k99 k. Description of Invention in Specification. Most Cited Cases

To be "enabling," patent specification must teach those skilled in art how to make and use full scope of claimed invention without undue experimentation. 35 U.S.C.A. § 112.

[10] Patents 291 ⚷99

291 Patents
   291IV Applications and Proceedings Thereon
      291k99 k. Description of Invention in Specification. Most Cited Cases

Claims in patent for genetically modified corn directed to chimeric plant gene were too general to enable person skilled in art to make and use claimed invention without undue experimentation, and thus claims were invalid for lack of enablement, where patent was directed to transforming plant cells, both monocots and dicots, with specific genes, and no method existed at time of patent application for one of skill in art to transform monocot plant cells. 35 U.S.C.A. § 112.

Patents 291 ⚷328(2)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))
(Cite as: --- F.3d ----)

Page 3

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases

Patents 291 &#128273;328(2)

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases
4,940,835. Invalid.

5,538,880, 6,013,863. Not Infringed.

Appealed from United States District Court for the District of Delaware, Chief Judge Sue L. Robinson.

Susan K. Knoll, Howrey LLP, of Houston, TX, argued for plaintiffs-appellants. With her on the brief were Thomas A. Miller, Richard L. Stanley, and Scott W. Clark.
Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendants-appellees. With him on the brief were Herbert H. Mintz, Michael J. Flibbert, Howard W. Levine, and Jennifer A. Johnson.

Before RADER and GAJARSA, Circuit Judges, and O'MALLEY, District Judge.[FN*]
RADER, Circuit Judge.
*1 On summary judgment, the United States District Court for the District of Delaware determined that Defendants-Appellees Syngenta Seeds, Inc.; Syngenta Biotechnology, Inc.; Garst Seeds Company; Golden Harvest Seeds, Inc.; Garwood Seed Co.; Golden Seed Co., LLC; Sokmer Bros. Seed Company; Thorp Seed Co. and JC Robinson Seeds, Inc., (collectively "Syngenta"), did not infringe the asserted claims of U.S. Patents Nos. 5,538,880 and 6,013,863 ("the Lundquist patents").*Monsanto Co. v. Syngenta Seeds, Inc.*, 431 F.Supp.2d 482, 487 (D.Del.2006). The trial court also held claims 1, 5 and 6 of U.S. Patent No. 4,940,835 ("the 835 patent") invalid under 35 U.S.C. § 112 for lack of enablement. *Id.* at 490. Finding no error, this court *affirms*.

I

This case involves three patents: U.S. Patents Nos. 5,538,880 ("the 880 patent"), 6,013,863 ("the 863 patent"), and the 835 patent. The three patents-in-suit involve technologies for producing transgenic corn ("GA21") that is resistant to glyphosate, a nonselective herbicide. The 835 patent, owned by Monsanto Company, claims a chimeric plant gene (DNA) that confers the glyphosate resistance to plants. The Lundquist patents, owned by Dekalb Genetics Corporation ("Dekalb"), Monsanto's wholly owned subsidiary, include methods of producing herbicide resistant transgenic corn (*Zea mays*) plants and seeds. The 880 patent differs slightly from the 863 patent. Specifically, the 880 patent claims the process of producing transgenic herbicide resistant corn and also insect resistant corn; the 863 patent claims the process of producing glyphosate resistant transgenic corn having a screenable marker gene.

On May 12, 2004, Monsanto Company and Monsanto Technology LLC filed a suit against Syngenta Seeds and Syngenta Biotechnology, Inc. in the District Court of Delaware alleging infringement of the 835 patent. A few months later, on July 27, 2004, Dekalb Genetics Corporation sued Syngenta Seeds and Syngenta Biotechnology, Inc.[FN1] in the Northern District of Illinois alleging infringement of the Lundquist patents.[FN2] On May 19, 2005, the District Court in Illinois granted Syngenta's motion to transfer the suit to Delaware.

Dekalb and Monsanto (collectively "Monsanto") allege that Syngenta used GA21 seed acquired from Monsanto's licensees to produce further progeny containing the GA21 trait, thereby infringing the claims of the 835 patent, claims 4-9 of the 880 patent and claims 5-6 of the 863 patent. Noting Dekalb itself performed the three steps of the independent claims of the 880 and 863 patents, Syngenta argues it did not infringe the Lundquist patents because it did not carry out all the steps of the asserted claimed processes during the term of the patent. Syngenta also counterclaims that the 835 patent application did not enable the asserted claims of the 835 patent.

Syngenta makes and sells genetically engineered crops. Syngenta obtained GA21 seeds when it acquired two seed companies, Garst Seed Company ("Garst") and Golden Harvest Seeds, Inc. ("Golden Harvest"), licensed to sell GA21 seed to farmers. Monsanto does not dispute that Dekalb made the original transgenic GA21 corn using a glyphosate resistant gene obtained from Bayer AG. Nor does

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))
(Cite as: --- F.3d ----)

Page 4

Monsanto dispute that in making the original transgenic GA21 corn, Dekalb performed the steps recited in claim 1 of both Lundquist patents. Indeed, Monsanto does not dispute that the original transgenic GA21 corn was produced in 1992-93, before issuance of either of the Lundquist patents (the 880 patent issued July 23, 1996; the 863 patent January 11, 2000).

*2 Claims 4-9 of the 880 patent read:
4. A process comprising obtaining progeny from a fertile transgenic plant *obtained by the process of claim 1* which comprise said DNA.
5. *The process of claim 4* wherein said progeny are obtained by crossing said fertile transgenic plant with an inbred line.
6. *The process of claim 4* comprising obtaining seed from said progeny plants comprising said DNA from said seed.
7. *The process of claim 5* wherein the progeny obtained are crossed back to the inbred line, to obtain further progeny which comprise said DNA.
8. *The process of claim 6* wherein seed are obtained from said further progeny plants and plants comprising said DNA are recovered from said seed.
9. *The process of claim 7* wherein said further progeny are crossed back to the inbred line to obtain progeny which comprise said DNA.

(emphases added). Claims 5-6 of the 863 patent read:
5. The process of claim 1 further comprising obtaining transgenic glyphosate resistant progeny plants of subsequent generations from said fertile transgenic plant.
6. The process of claim 5 further comprising obtaining seed from one of said progeny plants.

After claim construction, the Delaware District Court granted Syngenta's motions for summary judgment on May 10, 2006, finding the Lundquist patents not infringed because the patent holder (Monsanto through Dekalb) performed the initial steps of the claimed processes. The trial court also found claims 1, 5 and 6 of the 835 patent invalid for lack of enablement. *Monsanto,* 431 F.Supp.2d at 490. The district court specifically noted that Syngenta lawfully obtained the GA21 seeds from Monsanto's licensees, such as Garst and Golden Harvest. Upon obtaining the seeds, Syngenta also acquired the right to further produce GA21 progenies containing the glyphosate resistance trait. *Id.* at 487. Also, Monsanto itself (through its subsidiary Dekalb) made the original GA21 R0 plant, at a time before issuance of the Lundquist patents. *Id.*

On June 6, 2006, the district court entered a final judgment in favor of Syngenta and against Monsanto on both Monsanto's claim of infringement and Syngenta's counterclaim of invalidity under 35 U.S.C. § 112.

II

This court reviews a district court's grant of summary judgment without deference. *Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1353 (Fed.Cir.1998); *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1574 (Fed.Cir.1994). Thus, this court decides for itself "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, this court draws all reasonable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*3 [1]"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (citations omitted). The claim construction part of this test receives review as a question of law, see *Cybor Corp. v. FAS Techs. Inc.,* 138 F.3d 1448, 1451 (Fed.Cir.1998) (en banc), while infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Optical Disc Corp. v. Del Mar Avionics,* 208 F.3d 1324, 1333-34 (Fed.Cir.2000); *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed.Cir.1998).

[2] This court reviews determinations of enablement under 35 U.S.C. § 112, first paragraph, without deference. *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1268 (Fed.Cir.1986). Factual issues underlying enablement are reviewed for clear error. *Gould v. Quigg,* 822 F.2d 1074, 1077 (Fed.Cir.1987); *Atlas Powder Co. v. E.I. Dupont de Nemours & Co.,* 750 F.2d 1569, 1573 (Fed.Cir.1984) (appellant must establish that the district court's legal conclusions were erroneous, or that the underlying findings were

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

clearly erroneous); *see also Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Because Dekalb performed all the steps of claim 1 of both Lundquist patents, Monsanto necessarily asserted claims other than claim 1 (4-9 of the 880 patent and 5-6 of the 863 patent). Monsanto proffers two theories of infringement. First, Monsanto argues claim 4 of the 880 patent is an independent claim, thus not requiring an alleged infringer to perform the steps of claim 1. Second, Monsanto argues that, even if claim 4 is dependent on claim 1, Syngenta infringes because Syngenta's performance of the last step of the process of claim 4 resulted in performance of all of the claimed steps of claim 4, albeit with the first three steps performed by Monsanto.

Syngenta responds that claim 4 of the 880 patent depends on claim 1 and therefore includes all the steps of claim 1. Thus, claim 4 can only be infringed by the unauthorized performance of all the steps of claims 1 and 4. Consequently, because Monsanto (the patent holder) admittedly performed the steps of claim 1, Syngenta cannot infringe as a matter of law.

A. Claim Construction

The district court construed claims 4-9 of the 880 patent and claims 5-6 of the 863 patent as dependent from claim 1 of their respective patents. Claim 1 of the 880 patent recites a three-step process for generating an original R0 fertile transgenic plant containing DNA that provides herbicide resistance. The district court construed claim 4 as further adding a fourth step of obtaining progeny from a fertile transgenic plant produced by the process of claim 1. *Monsanto,* 431 F.Supp.2d at 485.

*4 Claims 5-9 of the 880 patent and claims 5-6 of the 863 patent fit the traditional dependent format. Claim 4 of the 880 patent features a format closely following the traditional dependent format. Although suggesting the correctness of the trial court's construction, this format, however, does not answer the entire question. Monsanto urges that claim 4 of the 880 patent is not "simply" a dependent claim because it entails significantly more than the process of claim 1. According to Monsanto, claim 4 is by itself a single-step process (process of obtaining progeny). Under Monsanto's construction, the dependent language refers instead to the novel starting material (a fertile transgenic plant previously obtained using the claim 1 process) of the new process in claim 4. To bolster its point, Monsanto draws attention to the form of claim 4, which differs a bit from the customary dependent claim format (i.e., "the process of claim 1 *further comprising...*").

[3] To establish whether a claim is dependent upon another, this court examines if the new claim both refers to an earlier claim and further limits that referent. 35 U.S.C § 112, ¶ 4 (2000) ("[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). A claim's status as dependent or independent depends on the substance of the claim in light of the language of § 112, ¶ 4, and not the form alone. *See also* Manual of Patent Examining Procedure (MPEP) § 608.01(m), (n) (August 2006); 37 C.F.R. § 1.75 (2007) (setting forth proper drafts for independent and dependent claims).

Claim 4 expressly recites the process of claim 1 and specifically requires a fertile transgenic plant obtained by the performance of the steps in claim 1. Further, it includes the additional step of obtaining progeny. Claim 4 thus incorporates the format specified by the statute for dependent claims. Contrary to Monsanto's argument, claim 4 clearly references another claim, not simply a starting material. The claim might have used express language to clarify that it only invoked the product of the process in claim 1 as a starting material, but did not do so. Instead, the claim language reads claim 1 into claim 4.

At oral argument on appeal, Monsanto argued that claim 4 is a process claim that merely recites a product made by an earlier process claim. Specifically, Monsanto stated that claim 4 is claiming a process using the starting material of a product which has been made by the process of steps 1, 2 and 3 of claim 1. This court finds this argument irrelevant to the resolution of the issue. Even if claim 4 is a product by process claim, Syngenta would still have to perform the steps of the process of claim 1 to infringe the product by process claim, i.e., claim 4 would only have meaning according to the incorporation of the limitations of claim 1. Claim 4 would contain the process steps of claim 1, which by its language requires this court to read the limitation of claim 1 into the new claim.

*5 [4] Although in a somewhat unusual format, claim 4 is dependent from claim 1 because it only stands if

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))  
**(Cite as: --- F.3d ----)**

Page 6

all three steps recited in claim 1 have been performed. In other words, the additional fourth step of obtaining progeny *depends* on the performance of the process comprising the three steps recited in claim 1 for obtaining a fertile transgenic plant. Claim 4 contains each element of a dependent claim.

Further, the prosecution history of the 880 patent provides additional insight into the scope of claim 4. Originally-filed claim 30, which corresponds to patent claim 4, was incontestably a dependent claim. Original claim 30 recited:
30. The process of claim 23 *further comprising* (iv) obtaining progeny from said fertile transgenic plant of step (iii), which comprise said DNA.

(emphasis added). This language even more expressly required performance of all three steps of the process of claim 23 (which corresponded to issued claim 1).

Upon later amending original claim 30 after the prosecution closed, Monsanto carefully explained that its amendments "do not introduce new matter and are allowable without further search and consideration." Moreover, the examiner accepted the amendment indicating the amendment was "directed to matters of form not affecting the scope of the invention." These two statements underscore that Monsanto did not change a four-step claim (original claim 30) into a single-step claim (claim 4) with its amendment. Instead, claim 4, like its predecessor claim, as attested by the prosecution history, is in dependent form and incorporates the limits of the overarching independent claim.

The district court correctly interpreted and applied 35 U.S.C. § 112, ¶ 4 to read claims 4-9 of the 880 patent and claims 5-6 of the 863 patent as dependent. Therefore, this court affirms the district court's claim construction.

B. Infringement

Turning to Monsanto's appeal of the district court's summary judgment ruling of non-infringement, Monsanto argues Syngenta infringed the asserted patents under 35 U.S.C. § 271(a) or in the alternative under § 271(g). The district court held that because Syngenta did not infringe the methods of the independent claims, it could not infringe the methods of the asserted dependent claims.

According to § 112, ¶ 4, claims in dependent form include all the limitations of the claim incorporated by reference into the dependent claim. On appeal, Monsanto concedes that Syngenta has not infringed independent claim 1 of either Lundquist patent. Nevertheless, Monsanto insists that Syngenta infringed claims 4-9 of the 880 patent and claims 5-6 of the 863 patent. To reach this conclusion, Monsanto contends that, even if the asserted claims of the Lundquist patents are dependent claims, Syngenta should still be liable for infringing them, because each limitation of the independent claims of the Lundquist patents have been performed (albeit by Monsanto's own subsidiary Dekalb). Alternatively, Monsanto contends that, even if the asserted claims of the Lundquist patents are dependent claims, Syngenta should still be liable for infringing them, because Syngenta infringes any "four-step" claimed process by completing the last step of "obtaining progeny" during the patent term (albeit with the first three steps occurring before the patents issued).

*6 [5] Monsanto's first argument cannot prevail in light of this court's decision in *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed.Cir.1989). In *Wahpeton*, this court explained:
One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.

*Id.*

According to Monsanto, the district court misconstrued *Wahpeton* as holding that dependent claims cannot be "infringed" unless someone would be liable for infringing the independent claims from which they depend. Monsanto urges that *Wahpeton* only applies when the accused product or process lacks a limitation present in the independent claim, but not when all the independent limitations are missing. The *Wahpeton* rule typically applies in cases where the accused product or process lacks a single limitation from the independent claim. *See Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1382-83 (Fed.Cir.2000). The rule does not change, however, where all of the steps of the independent claim are missing. In the present case, *no one* performed the three-step process of the independent claim "during the patent term," as required by § 271(a). Indeed, Monsanto itself (through Dekalb) practiced the three-step process before the 863 and 880 patents issued.

[6] Monsanto's second argument is also inconsistent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 2874217 (C.A.Fed.(Del.))
(Cite as: --- F.3d ----)

Page 7

with the basic rule for infringement. As this court has stated many times, "[f]or infringement of a process invention, all of the steps of the process must be performed, either as claimed or by an equivalent step."*EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 896 (Fed.Cir.1998). As a result of this rule, the performance of the three steps (of independent claim 1) is a *prerequisite* for the infringement of the four-step process claims of the Lundquist patents. Furthermore, infringement under § 271(a) requires use "without authority ... during the patent term."

[7][8] This case lacks any basis for infringement under claim 1 because those steps occurred before patent issuance. Monsanto itself performed those three steps before issuance of the Lundquist patents. Thus, Monsanto itself authorized the first three steps of the claimed four-step process. Thus, this court finds no error in the district court ruling as to the claim of infringement under § 271(a). Further, this court reaches the same result with respect to Monsanto's claim of infringement under § 271(g). Infringement is not possible under § 271(g) when the three first steps of the claimed process are performed before the issuance of the patent. In *Mycogen Plant Science, Inc. v. Monsanto Co.*, this court held that § 271(g) "requires that the patent be issued and in force at the time that the process is practiced and the product is made."252 F.3d 1306, 1318 (Fed.Cir.2001) (finding no § 271(g) infringement where all process steps were practiced and product was made before patent issued), *vacated on other grounds,*535 U.S. 1109, 122 S.Ct. 2324, 153 L.Ed.2d 153 (2002). This court explained "[b]ecause domestic entities do not infringe a process patent if they practice the process before the beginning of the patent term, even if they sell the products of the process during the term of the patent, parallel treatment of overseas entities indicates that the statute does not reach pre-issuance use of the later-patented process."*Id.* (citation omitted). Further, in *Joy Technologies, Inc. v. Flakt, Inc.*, this court explained that a method or process claim is directly infringed only when the process is performed. 6 F.3d 770, 774 (Fed.Cir.1993). Thus, infringement of a multi-step method claim cannot lie by the performance of a single step after issuance of the patent when the initial steps were performed prior to issuance. Therefore, this court affirms the district court's judgment that Syngenta's products do not infringe claims 4-9 of the 880 patent and claims 5-6 of the 863 patent. Syngenta cannot be liable under § 271(a) or (g).

C. Enablement

*7 [9] The first paragraph of Section 112 of the Patent Act requires that a patent application include "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same."35 U.S.C. § 112, ¶ 1. "[T]o be enabling, the specification of the patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.' " *In re Wright*, 999 F.2d 1557, 1561 (Fed.Cir.1993) (citing *In re Vaeck*, 947 F.2d 488, 495 (Fed.Cir.1991)); *In re Wands*, 858 F.2d 731, 736-37 (Fed.Cir.1988); *In re Fisher*, 57 C.C.P.A. 1099, 427 F.2d 833, 839 (C.C.P.A.1970)).

The district court held claims 1, 5 and 6 of the 835 patent invalid under § 112 because the specification does not enable the full scope of the broad functional language in claim 1 without undue experimentation.

Claim 1 of the 835 recites:
A chimeric plant gene which comprises:
(a) a promoter sequence which functions *in plant cells;*
(b) a coding sequence which causes the production of RNA, encoding a chloroplast transit peptide/5-enolpyruvylshikimate-3-p hosp hate synthase fusion polypeptide, which chloroplast transit peptide permits the fusion polypeptide to be imported into a chloroplast *of a plant cell;* and
(c) a 3'non-translated region which encoded a polyadenylation signal which functions *in plant cells* to cause the addition of polyadenylate nucleotides to the 3'end of the RNA;
the promoter being heterologous with respect to the coding sequence and adapted to cause sufficient expression of the fusion polypeptide to enhance the glyphosate resistance *of a plant cell* transformed with the gene.

(emphases added). As this court noted in *Plant Genetic Systems,*"[f]lowering plants can be broadly categorized as monocotyledons ('monocots') and dicotyledons ('dicots'), depending on whether the initial development of the seed produces one leaf (monocot) or two leaves (dicot)."315 F.3d 1335, 1338 (Fed.Cir.2003).

The district court correctly construed claim 1 of the 835 patent to require the claimed gene to function in *any* plant cell, including both dicots and monocots. Indeed, the functional language of claim 1 is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))
(Cite as: --- F.3d ----)

Page 8

analogous to the functional language in *In re Vaeck*, 947 F.2d 488, 490 (Fed.Cir.1991). In *Vaeck*, this court held the limitation "[a] chimeric gene capable of being expressed in Cyanobacteria cells" required the claimed gene to function in all cyanobacteria. *Id.* at 495.This court affirmed the rejection of the Patent Office because there was "no reasonable correlation between the narrow disclosure in appellants' specification and the broad scope of protection sought in the claims encompassing gene expression in any and all cyanobacteria."*Id.* Indeed, cyanobacteria comprised approximately 150 different genera and was poorly studied and highly unpredictable. *Id.* at 493.Under these conditions, this court held full enablement would require undue experimentation. *Id.* at 496.

*8 Just as the chimeric genes claimed in *Vaeck* were not limited to expression in a subset of cyanobacteria, claim 1 of the 835 patent extends to cells of all flowering plants, both monocots and dicots, and indeed to all plant cells. Once again, the 835 patent was filed before transformation of monocot cells was possible. Therefore, those skilled in the art could not transform a monocot plant cell as of the filing date of the patent application. The claim requires transformation of the plant cell. Without the ability to transform a monocot cell, one skilled in the art could not determine whether the plant gene could carry out the claimed functions and thus fall within the scope of the claim.

To counter this logic, Monsanto argues that the disputed claim language merely describes the operation of the discrete gene components in a plant cell, but does not operate as a limitation. In other words, Monsanto argues that the term "plant cell" should not convert chimeric gene claims into claims directed to plants or plant cells transformed with the claimed gene, particularly where the patent already contains separate claims directed to such plants and plant cells.

[10] This court agrees with the district court. Monsanto's patent recites broad functional language in its claims. This court in *In re Goodman* addressed a very similar issue, holding the full scope of Goodman's patent not enabled due to an absence of reliable evidence of "gene transformation method of use with monocot plants" as of Goodman's 1985 filing date. 11 F.3d 1046, 1052 (Fed.Cir.1993). Again, in Plant *Genetic Systems*, this court held practicing stable gene transformation for monocot cells in 1987 required undue experimentation. 315 F.3d at 1338. As in these prior cases, the evidence here does not demonstrate that as of the filing date of the 835 patent (July 7, 1986) the invention was enabled.

IV

As a final matter, Monsanto notes that for the purposes of the present appeal, the district court did not construe every disputed claim term. Rather, the district court only construed terms relevant to the present appeal. In a footnote, the district court stated "[f]or purposes of appeal, and consistent with the above conclusions of law, the court adopts the claim construction proposed by defendants (D.I.309) in connection with the asserted claims of the 880 and 863 patents... [and] of the 835 patent."Monsanto invites this court to vacate the district court's claim constructions in the footnote. As none of the terms covered by the footnote are on appeal, this court does not need to reach this issue in its present decision.

The district court granted summary judgment that Syngenta did not infringe the asserted claims of U.S. Patents Nos. 5,538,880 and 6,013,863 and that claims 1, 5 and 6 of U.S. Patent No. 4,940,835 are invalid for lack of enablement. Because there are no genuine issues of material fact, and the district court's judgment was adequately supported as a matter of law, this court affirms.

*9 *AFFIRMED*

COSTS

Each party shall bear its own costs.

FN* Honorable Kathleen O'Malley, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

FN1. The complaint was later amended by Dekalb Genetics Corporation to add Garst Seeds Company; Golden Harvest Seeds, Inc.; Garwood Seed Co.; Golden Seed Co., LLC; Sokmer Bros. Seed Company; Thorp Seed Co. and JC Robinson Seeds, Inc. as defendants.

FN2. On July 28, 2004, one day after being

--- F.3d ----  
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))  
**(Cite as: --- F.3d ----)**

Page 9

sued by Dekalb, Syngenta Seed, Inc. filed a suit against Monsanto Company and Monsanto Technology LLC in the Delaware district court alleging antitrust violations. This suit was consolidated with the 835 patent case before the Delaware district court.

C.A.Fed. (Del.),2007.  
Monsanto Co. v. Syngenta Seeds, Inc.  
--- F.3d ----, 2007 WL 2874217 (C.A.Fed. (Del.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.