# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1874830 (S.D.N.Y.)
(Cite as: 2002 WL 1874830 (S.D.N.Y.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
GLAXO WELLCOME, INC., Plaintiff,
v.
EON LABS MANUFACTURING, INC. Defendant.
**No. 00 Civ. 9089 LMM.**

Aug. 13, 2002.

Owner of patent for pharmaceutical drug sued generic drug manufacturer for infringement. On defendant's motion for summary judgment, the District Court, McKenna, J., held that patent was invalid for lack of enablement.

Motion granted.

*West Headnotes*

**Patents** ⚿99
291k99 Most Cited Cases
Patent for sustained release version of drug was invalid for lack of enablement; claim, which encompassed all structures which released drug at described rates, was broader than limited number of examples in specification. 35 U.S.C.A. § 112 ¶ 1.

*MEMORANDUM AND ORDER*

MCKENNA, J.

*1 Plaintiff Glaxo Wellcome ("Glaxo Wellcome") holds United States Patent Reissue No. 33,994 (" '994 patent") and United States Patent No. 5,427,798 (" '798 patent"), which cover sustained release formulations of bupropion hydrochloride ("BH"), the active ingredient in the anti-depression drug Wellbutrin ("Wellbutrin"). Defendant Eon Labs ("Eon") makes generic drugs, and filed an Abbreviated New Drug Application ("ANDA") in July 2000, seeking FDA approval to market a generic version of Wellbutrin. Glaxo Wellcome brought an action for patent infringement against Eon based on the ANDA filing. Currently before this Court is Eon's motion for partial summary judgment claiming that the '994 patent is invalid pursuant to 35 U.S.C. § 112 ¶ 1. [FN1] For the reasons set forth below, Eon's motion is granted.

> FN1. Defendant's motion for partial summary judgment of non-infringement of the '798 patent is also before this Court and is addressed in a separate Memorandum and Order.

STATEMENT OF FACTS
Burroughs Wellcome Company ("Burroughs") filed an application in 1984 leading to United States Patent No. 4,687,660 (" '660 patent"), which issued on August 18, 1987. (Def.'s Mem. in Supp. at 2.) Subsequently, Burroughs merged with a company called Glaxo to form Glaxo Wellcome. In 1989, Glaxo Wellcome filed a reissue application for the '660 patent pursuant to 35 U.S.C. § 251 asserting that the '660 patent failed to claim aspects of the invention. [FN2] (Pl.'s Mem. in Opp'n at 9.) According to the specification, the part of the patent filing that describes the invention, the invention at issue "provides a method and means for dispensing in a controlled, continuous manner therapeutically effective amounts of water-soluble drugs for a predetermined period of time to achieve a predetermined useful effect in animals, especially mammals, including in particular human beings." (App. to Pl.'s Mem. in Opp'n Ex. 1.) The reissue application sought to claim sustained release compositions specifically limited to BH and mentions "a composition of the drug in a solid sustained release pharmaceutical carrier with particular limiting testing conditions." (App. Ex. 8; Pl.'s Mem. in Opp'n at 10, 12.)

> FN2. The reissue statute permits the addition of claims to subject matter not claimed in the original patent, but otherwise supported in the specification. *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340, 1354 (Fed.Cir.1998). In order to obtain a reissue patent, the owner must show that the claims were disclosed in the written description of the original patent and that the subject matter meets the requirements of patentability. 3 Donald S. Chisum, *Chisum on Patents,* § 15.03 (1999). If the applicant seeks to broaden the original patent claims, the application must be filed within two

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00642-JJF    Document 157-6    Filed 01/07/2008    Page 3 of 6

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 1874830 (S.D.N.Y.)
(Cite as: 2002 WL 1874830 (S.D.N.Y.))

years from issuance of the original patent. 35 U.S.C. § 251. According to plaintiff, this requirement was met. (Pl.'s Mem. in Opp'n at 11.)

The "claims" comprise part of the patent specification and "particularly and distinctly define the subject matter that the inventor regards as his or her invention. The claims set the metes and bounds of the patent owner's exclusive rights.... The claims of a patent may vary in scope. Broad claims include fewer elements, or limitations, than narrow claims and therefore cover a wider range of subject matter." Herbert F. Schwartz, Patent Law & Practice 11-12 (2d ed.1995).

The Patent Examiner originally rejected all of the claims in the application as obvious under 35 U.S.C. § 103 and indefinite under 35 U.S.C. § 112 because the claims were unduly broad in the phrase "controlled release composition." (App. Ex. 9; Pl.'s Mem. in Opp'n at 12.) Glaxo Wellcome then amended the claims in the reissue application, adding dissolution testing parameters. (App. Ex. 10 at 6; Pl.'s Mem. in Opp'n at 12.) The Examiner rejected the claims based on § 112 ¶ 1, finding that the specification and the examples did not provide support for the invention as it was claimed. (App. Ex. 11 at 3-5.) The Examiner's rejection stated:

> While examples 1 and 2 of Patent No. 4,687,660 set forth data which would support claims directed to ... controlled release compositions for oral administration comprising bupropion hydrochloride as an active ingredient in solid sustained release pharmaceutical carrier, said composition releasing about 10% to 45% of bupropion hydrochloride within two hours, releasing about 25% to 70% of bupropion hydrochloride within four hours, and releasing about 40% to 90% of bupropion hydrochloride within six hours, as measured in simulated gastric buffer with a pH of 1.5 at 37C ... no such claim has been presented.

*2 (App. Ex. 11 at 2-3.) According to plaintiff, it incorporated the Examiner's exact language into Claim 20 of the reissue application, which became Claim 7 when the '994 patent issued on July 14, 1992. (App. Ex. 12, 19; Pl.'s Mem. in Opp'n at 13.) The Examiner explained that the claim was allowed because of the release rates: "the data set forth in the file of the instant application shows unexpected and unobvious results due to the composition releasing bupropion hydrochloride at such a rate." (App.Ex. 19.) Claim 7 is the sole claim of the '994 patent. (Pl.'s Mem. in Opp'n at 13.)

Glaxo Wellcome holds FDA-approved New Drug Application ("NDA") No. 20-358 for sustained release BH tablets. Eon filed an Abbreviated New Drug Application ("ANDA") No. 75-932 in July 2000, seeking FDA approval to market a generic copy of the tablets. Since Eon sought to market its generic Wellbutrin SR tablets before the expiration of the patents, Eon provided a Patent Certification to Glaxo Wellcome of Eon's ANDA filing seeking to market its products before patent expiration, claiming that the '798 and '994 patents are invalid and/or not infringed by its ANDA products (Paragraph IV Certification, 21 U.S.C. § 355(j)(2)(A)(vii)(IV)). The filing and certification is a statutory act of infringement under 35 U.S.C. § 271(e)(2)(A), and Glaxo Wellcome commenced the present action.

BACKGROUND

A patent's "specification" is a written description of the invention, the preferred embodiment of the invention, and how to make and use it. 35 U.S.C. § 112. The specification concludes with "claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." Id. Infringement is determined by comparing the accused product with the language of the claims. SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1121 (Fed.Cir.1985). Section 112, which contains the patent specification requirement, reads in part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112 ¶ 1 (1994).

The enablement requirement demands that the patent specification enable "those skilled in the art to make and use the invention as broadly as it is claimed without undue experimentation." In re Cortright, 165 F.3d 1353, 1356 (Fed.Cir.1999). The fact that some experimentation is necessary does not preclude enablement, but if unduly extensive experimentation is necessary, the claim will fail. W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1557 (Fed.Cir.1983).

The enablement requirement ensures that the public knowledge is enriched by the patent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2002 WL 1874830 (S.D.N.Y.)
(Cite as: 2002 WL 1874830 (S.D.N.Y.))

specification to a degree at least commensurate with the scope of the claims. The scope of the claims must be less than or equal to the scope of the enablement. The scope of the enablement, in turn, is that which is disclosed in the specification plus the scope of what would be known to one of ordinary skill in the art without undue experimentation.

*3 *National Recovery Tech., v. Magnetic Separation Sys.*, 166 F.3d 1190, 1196 (Fed.Cir.1999); *see also In re Goodman*, 11 F.3d 1046, 1050 (Fed.Cir.1993); *In re Fisher*, 57 C.C.P.A. 1099, 427 F.2d 833, 839 (C.C.P.A.1970). A patent must meet the enablement requirement at the time the patent application is filed. *W.L. Gore*, 721 F.2d at 1556.

The Federal Circuit has set forth a number of factors to guide courts in the determination of what constitutes undue experimentation, including: 1) the quantity of experimentation necessary; 2) the amount of direction or guidance presented; 3) the presence or absence of working examples; 4) the nature of the invention; 5) the state of the prior art; 6) the relative skill of those in the art; 7) the predictability or unpredictability of the art; and 8) the breadth of the claims. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed.Cir.1999) (quoting *In re Wands*, 858 F.2d 731, 737 (Fed.Cir.1988)).

Therefore, the relevant inquiry with respect to enablement:
> lies in the relationship between the specification, the claims, and the knowledge of one of ordinary skill in the art. If, by following the steps set forth in the specification, one of ordinary skill in the art is not able to replicate the claimed invention without undue experimentation, the claim has not been enabled as required by § 112, paragraph 1.

*National Recovery Tech.*, 166 F.3d at 1196.

The question before this Court involves the *scope* of the enablement in the '994 patent and its correlation to the disclosure in the specification. The Examiner will reject a disclosure based on the scope of the enablement where the written description enables something within the scope of the claims, but the claims are not limited to that scope. *In re Cortright*, 165 F.3d at 1356; Manual of Patent Examining Procedures § 706.03(c). Such a rejection "is marked by language stating that the specification does not enable one of ordinary skill to use the invention commensurate with the scope of the claims." *In re Cortright*, 165 F.3d at 1356.

"Nonenablement is the failure to disclose *any* mode."

*Spectra-Physics v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed.Cir.1987) (citing *In re Glass*, 492 F.2d 1228, 1233 (C.C.P.A.1974)). Although the Court finds that the invention at issue is at least partially enabled, case law provides guidance as to the type of disclosure necessary to enable a broad claim such as Claim 7.

Focusing on the seventh *Wands* factor, if an invention pertains to a mechanical art, disclosure, by a single example, of a way to make and use the claimed invention can enable a broad claim. *Spectra-Physics*, 827 F.2d at 1533. However, in cases involving unpredictable factors, including the chemical arts, courts have "refused to find broad generic claims enabled by specifications that demonstrate the enablement of only one or a few embodiments and do not demonstrate with reasonable specificity how to make and use other potential embodiments across the full scope of the claim." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed.Cir.1996); *see also In re Fisher*, 427 F.2d at 839 (in "cases involving unpredictable factors such as most chemical reactions and physiological activity, the scope of enablement obviously varies inversely with the degree of unpredictability of the factors involved.").

*4 Describing an invention in terms of what it accomplishes does not necessarily render a claim improper. *In re Swinehart*, 58 C.C.P.A. 1027, 439 F.2d 210, 213 (C.C.P.A.1971). However, a claim employing functional language "covers any and all embodiments which perform the recited function. Legitimate concern often properly exists, therefore, as to whether the scope of protection defined thereby is warranted by the scope of enablement indicated and provided by the description contained in the specification." *Id.* [FN3]

> FN3. A patent claim "which recites merely one means plus a statement of function and nothing else," *In re Hyatt*, 708 F.2d 712, 713-14 (Fed.Cir.1983), known as a "single means claim," covers any way of achieving the stated result, while the specification only discloses the means known to the inventor. Therefore, courts have held such claims invalid under § 112. *Id.* at 714; *Fiers v. Revel*, 984 F.2d 1164, 1171 (Fed.Cir.1993).

STANDARDS OF REVIEW
In ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and resolves all evidentiary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1874830 (S.D.N.Y.)
(Cite as: 2002 WL 1874830 (S.D.N.Y.))

Page 4

doubts in the nonmovant's favor. *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed.Cir.1990).

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250. For a dispute to be genuine requires more than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). The burden on the moving party may be discharged by "showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once issued, patent claims are presumed to be valid. 35 U.S.C. § 282. The presumption of validity includes a presumption that the patent complies with § 112. *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed.Cir.1990). Therefore, the party challenging validity must prove invalidity by clear and convincing evidence. *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1359 (Fed.Cir.1998); *Atlas Powder Co. v. E.I. Du Pont de Nemours*, 750 F.2d 1569, 1573 (Fed.Cir.1984). Whether a claim is enabled under 35 U.S.C. § 112 is reviewed as a question of law, although based upon underlying factual findings. *National Recovery Tech.*, 166 F.3d at 1194; *Spectra-Physics*, 827 F.2d at 1533. The existence of a genuine issue of material fact will preclude granting summary judgment on the issue of lack of enablement. *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1568 (Fed.Cir.1990).

DISCUSSION

According to defendant, Claim 7 eliminates all of the structure defined by the claims in the '660 patent and instead "encompasses any and all 'compositions' which, when immersed in a 'simulated gastric buffer' in a laboratory, release buprorion hydrochloride at rates stated in the claim." (Def.'s Reply at 2.) Therefore, according to defendant, this claim is not enabled because it is broader than the examples in the specification and encompasses all structures which release BH at the described rates. (Id. at 2-3.) This Court finds defendant's argument convincing because plaintiff has failed to come forward with evidence of meaningful limitations on the claim and has failed to establish a question of fact as to whether a person of ordinary skill in the art would be able to determine how to obtain controlled release of this drug in a way that differs from other controlled release compositions. As a result, the Court concludes that Eon has met its burden of showing invalidity by clear and convincing evidence.

*5 The expert testimony that plaintiff offers does not suffice to show that the claim, which employs functional language, deserves broad protection. Plaintiff offers expert testimony that Claim 7 has three means recitations which limit the claim: (1) BH, the active ingredient; (2) a "solid sustained release pharmaceutical carrier" for "oral administration" which forms the "composition" with the BH, meaning tablets rather than non-solids, and an active ingredient combined with agents that has sustained release properties; and (3) a simulated gastric buffer time-dissolution profile, whereby the drug must release BH at certain rates. (Pl.'s Mem. in Opp'n at 4, 18, 22; Lowman Decl. ¶¶ 15, 29.) However, these means recitations reveal that the claim defines the invention by the results achieved, rather than by the invention's structure or ingredients.

The structure by which the invention achieves sustained release at the claimed release rates is explained neither in the claim nor by plaintiff's expert, Dr. Lowman. Dr. Lowman offers testimony that a person of ordinary skill in the art would be able to make the tablets and to practice sustained release, based on the two enabling provisions contained in the '994 patent specification, designated as examples one and two. (App. Ex. 1 at col. 5, line 30 through col. 6, line 4; Pl.'s Mem. in Opp'n at 20; Lowman Decl. ¶ 26.) These examples, according to Lowman, "describ[e] the composition and testing of BH tablets for oral administration with sustained release properties in SGF under given test conditions," and describe the formulation of the tablets. (Pl.'s Mem. in Opp'n at 19-20; Lowman Decl. ¶¶ 25-26.) However, this Court finds that the claim is broader than these examples. The examples merely show that Glaxo Wellcome can achieve the stated release rates through the structure and the ingredients of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5
Not Reported in F.Supp.2d, 2002 WL 1874830 (S.D.N.Y.)
**(Cite as: 2002 WL 1874830 (S.D.N.Y.))**

examples. This does not suggest that other tablets could be formulated without undue experimentation that would release BH at the same rates. The technology involved here, chemistry, is unpredictable. As explained by one court, "in arts such as chemistry it is not obvious from the disclosure of one species, what other species will work." *In re Vaeck, 947 F.2d 488, 493 n. 20 (Fed.Cir.1991).* Therefore, the examples offered by plaintiff, which are very similar to one another, do not suffice. Since plaintiff's expert testimony offers only conclusory statements about the ability of a person of ordinary skill to make compositions of the invention other than those described in the examples, i.e., whether a person skilled in the art would be able to practice the invention to the full extent of the specification, this Court finds the testimony to be insufficient to establish a question of fact as to enablement.

Based on plaintiff's failure to come forward with evidence that the claim is limited to the scope of the written description, this Court finds that defendant has shown by clear and convincing evidence that the specification is not enabling under 35 U.S.C. § 112 ¶ 1.

CONCLUSION

*6 Pursuant to Federal Rule of Civil Procedure 54(b), as there is no just reason for delay, this Court directs the Clerk to enter final judgment in Eon's favor as to the invalidity of the '994 patent.

Not Reported in F.Supp.2d, 2002 WL 1874830 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

• 2002 WL 33011374 (Expert Report and Affidavit) Declaration of Kathryn E. Uhrich, Ph.D. (Dec. 20, 2002)Original Image of this Document (PDF)

• 2002 WL 33030737 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment Dismissing Defendant's Affirmative Defense and Declaratory Judgment Counterclaim for Delisting of the '994 Patent from the FDA's Orange Book (Nov. 22, 2002)Original Image of this Document (PDF)

• 2002 WL 33030738 (Trial Motion, Memorandum and Affidavit) Plaintiff Glaxo's Memorandum in Opposition to Defendant Eon's Motion for Summary Judgment of Invalidity for Lack of Written Description (2002)Original Image of this Document (PDF)

• 2000 WL 34634849 (Trial Pleading) Complaint (Nov. 29, 2000)Original Image of this Document (PDF)

• 1:00cv09089 (Docket) (Nov. 29, 2000)

• 2000 WL 34630469 (Expert Trial Transcript) (Transcript) (2000)Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.