## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

ALZA CORPORATION, and
McNEIL-PPC, INC.,

          Plaintiffs,

    v.

ANDRX PHARMACEUTICALS, LLC, and
ANDRX CORPORATION,

          Defendants.

C.A. No. 05-642-JJF

## PUBLIC REDACTED VERSION

### DEFENDANTS' ANSWERING POST-TRIAL BRIEF
### CONCERNING PLAINTIFFS' EVIDENTIAY OBJECTIONS

Dated: January 30, 2008

RAWLE & HENDERSON LLP
William J. Cattie, III, Esq.
I. D. No. 953
300 Delaware Avenue, Suite 1015
P. O. Box 588
Wilmington, DE 19899-0588
302-778-1200
Facsimile: 302-778-1400

*Of Counsel:*

John W. Bateman
C. Kyle Musgrove
Robert F. Vroom
Douglas T. Lee
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
202-220-4200

*Attorney for Defendants*
*Andrx Pharmaceuticals, LLC, and*
*Andrx Corporation.*

## I.     INTRODUCTION

During a five day bench trial held from December 10 – 14, 2007, Plaintiffs Alza

Corporation, and McNeil-PPC, Inc. ("Alza") and Defendants Andrx Pharmaceuticals,

LLC, and Andrx Corporation ("Andrx") raised several evidentiary objections.  The Court

reserved its ruling and requested that the parties submit briefs on any issues that could not

be resolved.  After a series of discussions, Defendants withdrew all of its objections and

Plaintiffs decided to maintain two of their objections.  In accordance with an agreed upon

schedule between the parties, Plaintiffs submitted their opening brief on those issues on

January 23, 2008.  (*See* D.I. 166).  This is Defendants' answering brief.

The Court indicated at the end of trial (D.I. 152 at pp. 1425-28) that there would

only be two rounds of briefing, *i.e.*, there is to be no reply brief.  Once the Court decides

on the admissibility of these few items, the parties are then to submit their revised findings

of fact and conclusions of law.  (*Id.*)

## II.    ARGUMENT

Plaintiffs object to certain deposition designations proffered by Defendants

regarding one of Plaintiffs' experts which they chose not to call at trial: Dr. Feifel.

Plaintiffs also object to two demonstratives (*i.e.*, DTX 1196 and 1197) and trial testimony

(*i.e.*, D.I. 150 at pp. 818 – 820:12) of one of Defendants' experts: Dr. Mayersohn.  The

testimony and demonstratives should be admitted.

**A.    Dr. Feifel's Deposition Testimony Was Not Offered in an Untimely Manner.**

Prior to turning to Plaintiffs' arguments for the exclusion of this testimony it is of some note to view the bases of objection that Plaintiffs do *not* raise for excluding Dr. Feifel's testimony.  Plaintiffs do not object under any of the typical Federal Rules of Evidence, rather Plaintiffs' sole objection is to the timeliness of the proffer of testimony. That concern, however, is addressed by Plaintiffs' Appendix A which represents their counter-designations of Dr. Feifel's testimony.  Defendants do not object, with one exception,[1] to Plaintiffs' counter-designations being included if Defendants' Designations are admitted into the record.[2]

Instead of arguing an evidentiary basis for excluding the testimony, Plaintiffs erroneously argue that the testimony should be excluded because: (1) the testimony was offered after close of testimony in Defendants' case, including the fact that Defendants revised their designations during the time period of discussions regarding the evidentiary objections; (2) the testimony goes beyond that covered during Dr. Mayersohn's examination; and (3) Defendants should have offered the testimony earlier because Plaintiffs had "informed" Defendants on the Friday before commencement of trial that Dr. Feifel would not testify at trial.

---

[1]     Defendants do note that pages 112:24-113:23 of Plaintiffs' counter-designations are irrelevant under Federal Rules of Evidence 401-403 because the testimony relates to claim 3 of the '373 patent. Plaintiffs did not assert infringement of claim 3 at trial, nor did Defendants assert invalidity of claim 3 at trial. Therefore, this testimony is wholly irrelevant.

[2]     For ease of reference, attached as Exhibit 1 to this brief are the pages from Dr. Feifel's deposition transcript that have been designated (highlighted in pink) or counter-designated (highlighted in yellow). The transcript pages are annotated to include any edits made by Dr. Feifel in his errata sheets. The errata sheets are also included and follow the transcript pages.

1.    **Defendants' Proffer of Dr. Feifel's Testimony Was Not Untimely.**

With regard to the first point, Plaintiffs are wrong and some of their arguments are, at best, confusing.  This Court will recall that the order of trial was specifically raised at the September Pretrial Conference.  At that time, the Court indicated that Plaintiffs would go first on infringement, Defendants would then respond on the issue of infringement and present their opening case on invalidity, Plaintiffs would have the final word on infringement and respond to the case on invalidity, and finally, Defendants would have the final word on the issue of invalidity because they carry the burden of proof on that issue.

At trial, however, rather than closing their case on December 14th and waiting to see if Defendants had any rebuttal evidence to offer, Plaintiffs' counsel closed their case and immediately proceeded to housekeeping matters.  (D.I. 152 at p. 1424).  Defendants counsel then offered Dr. Feifel's testimony as rebuttal testimony because Dr. Feifel had not appeared to testify for Plaintiffs and be cross-examined by Defendants.[3]  (*Id.* at pp. 1428-29).  Plaintiffs' counsel did not object at that time to the timeliness of Defendants' submissions or make any of the other arguments they made in their Opening Brief.  Therefore, it would appear that Plaintiffs' arguments that are raised in their brief regarding the admissibility of Dr. Feifel's testimony in its entirety, as opposed to specific objections to questions and answers, have been waived.  In any event, it was clear that Defendants'

---

[3]    Defendants' counsel did not specifically note at that time the Dr. Feifel's testimony was being offered as rebuttal evidence, but counsel did indicate that to Plaintiffs' counsel during the subsequent discussions to attempt to resolve the remaining evidentiary issues.  Despite this explanation, Plaintiffs' nowhere address Defendants' right under the stated order of trial to present rebuttal evidence on invalidity.

initial proffer of Dr. Feifel's testimony occurred before Defendants closed their rebuttal case on validity, and thus, was not untimely in any respect.

Plaintiffs' support their argument of untimeliness by arguing that Defendants' later revised their designations and that these designations are even more objectionable than Defendants' initial proffer of testimony. (D.I. 166 at 1,3). This argument implies that Defendants' proffered additional testimony subsequent to trial, but this is not true. Exhibit A to Plaintiffs' Opening Brief included the original designations handed to both the Court and counsel at the close of trial. This proffer, as indicated above, was not objected to despite counsel having been handed it, and despite it being readily apparent that the designations went beyond the testimony on which Dr. Mayersohn was examined. The subsequent revised designations did not add designated material; they **reduced** it in an effort to compromise on the objections. (*See* Exhibit B to D.I. 166). Exhibit B contains a left hand column which includes the December 14, 2007 designations that were handed up and the right hand column are the designations which are now being offered by Defendants. (*Id.*) The reduction in material designated can be seen by a comparison of the two columns. How removal of previously designated items could be "even more objectionable than the original designations" is, at best, unclear.

Finally, since Defendants were offering Dr. Feifel's testimony during the rebuttal phase of its invalidity case, Plaintiffs cannot be prejudiced by their inability to call Dr. Feifel or other witnesses to respond because they were not entitled to do so in any event.

The designations offered by Defendants amplify subject matter that was already cited in Defendants' Pretrial submissions and also includes testimony that rebuts Plaintiffs' testimony regarding the validity of the patents in suit.[4] (*See, e.g.*, Ex. 1 at pages 90 – 92 (Dr. Feifel testifying that a physician is not one of skill in the art for the claims at issue, and that if it was known that a drug exhibited acute tolerance a reasonable possibility, would be to counteract the acute tolerance by increasing the plasma levels of the drug – rebuts testimony of Dr. Patrick); at pages 93-94 (Dr. Feifel testifying that just spacing the doses of a drug which exhibits acute tolerance would not necessarily be the solution due to drawbacks of that regimen – rebuts testimony of Dr. Patrick); at pages 23 – 24 (Dr. Feifel testifying that the main reason that he does not prescribe Ritalin LA more often is that Concerta was first to the market – rebuts testimony of Plaintiffs' commercial success expert Dr. Rozek); at page 132 (Dr. Feifel testifying that it was his opinion that there are other medications, such as Ritalin LA, which produce clinical benefits comparable to Concerta in many patients – rebuts Dr. Rozek); and at pages 191 – 193 (Dr. Feifel testifying that the physical structure of Concerta's osmotic mechanism, which reduces Concerta's abuse potential, is one of the contributors to Concerta's commercial success – rebuts Dr. Rozek)).

In any event, Plaintiffs' counter-designations permit them to clarify anything that they feel is out of context. Additionally, Plaintiffs' failure to object to any actual question

---

[4]    Defendants also note that in the opening Pretrial submissions, Plaintiffs (unlike Defendants) only addressed the issues for which it bore the burden of proof (*i.e.*, Plaintiffs' opening pretrial submissions only concerned infringement); thus, Defendants were unable to rebut Plaintiffs' validity contentions in the pretrial submissions as Plaintiffs only raised those issues their responsive brief and there were only two rounds of pretrial briefing.

or answer indicates that there is nothing objectionable about the testimony itself. And Dr.

Feifel had already availed himself of the opportunity to correct his testimony, including the

opportunity to substantively edit his testimony, *see, e.g.*, pages 186-188 of his transcript, as

provided in his errata sheets. (*See* Exhibit 1). It appears that Dr. Feifel was not called for

one very simple reason: Plaintiffs expected Dr. Feifel to give helpful testimony for

Defendants. Plaintiffs now wish to both avoid the bad testimony that Dr. Feifel would

have likely given at trial and expunge the record of the bad testimony given during his

deposition under the guise of an objection on timeliness.

> **2.    The Notice and Record Relating to Dr. Feifel's Testimony Was More Comprehensive than the Testimony Referred to by Dr. Mayersohn.**

Plaintiffs now argue that the only notice they had regarding Defendants proffer of

Dr. Feifel's testimony was the portion referred to by Dr. Mayersohn. This simply is not so.

Numerous portions of Dr. Feifel's testimony were cited in Defendants' Pretrial

Papers. And with regard to those citations, Plaintiffs' counsel, at the very moment he

objected to the use of Dr. Feifel's testimony during examination of Dr. Mayersohn stated:

> Your Honor, let me just say this is a little unconventional. **There is nothing in his expert report about this. I think it's cited in their brief. If they want to quote the deposition testimony from Dr. Feifel, I don't know whether we're going to be bringing him here to testify. It's in the record already** and the only thing I would say is if the deposition testimony is going to be referenced, then the errata sheet should be there as well, but otherwise it seems to me it's inappropriate to have this witness testifying about it.

(D.I. 150 at pp. 866-67) (emphasis added).

Plaintiffs' took the view at trial, and Defendants agree, that the testimony which was cited in the Pretrial submissions was already in the record. A listing of the pages from Dr. Feifel's deposition transcript cited in the Defendants' Pretrial submissions are attached as Exhibit 2 hereto.[5] At the very least, the acknowledgement by Plaintiffs' counsel to the Court that the testimony cited in the Pretrial submissions is in the record shows that Plaintiffs have missed their opportunity to object to the pages of Dr. Feifel's deposition cited to and submitted in the Pretrial submissions. Furthermore, there can be no argument that Plaintiffs' are surprised or prejudiced by the inclusion of that testimony now.

Therefore, at least, the testimony in Exhibit 2 is already of record and Plaintiffs' objection to that testimony should be overruled.

### 3.    Defendants Were Not Informed Before Trial that Dr. Feifel Would Not Testify.

Dr. Feifel was included on both Plaintiffs' and Defendants' Pretrial Witness lists that were submitted to the Court with the Pretrial Order. (D.I. 125 at Tabs 8 and 10). As trial approached, counsel reached an agreement to exchange a best efforts, non-binding live witness list on December 5, 2007. (Exhibit 3). Dr. Feifel was on that list for Plaintiffs. Counsel also agreed to exchange non-binding witness lists on December 7, 2007, which were intended to indicate the expected order of the live witnesses. (Exhibit 4). Therefore, at that time – the Friday before commencement of trial, Defendants knew that Dr. Feifel was not included on the informal December 7, 2007 list, but they were unsure whether or not Dr. Feifel would actually appear. The tentative nature of this list is evidenced by the

---

[5]      Copies of the pages were included in Defendants' compendium of exhibits to their pretrial briefs. (*See* D.I. 139, Volume 5 of 5, behind the Expert Witness tab).

fact that the fourth person included on the list, Mr. Walker, did not appear to testify although Plaintiffs had tentatively indicated that he would be called.

In any event, Plaintiffs' counsel – again at the very time of objecting to Dr. Mayersohn's testimony regarding the Feifel transcript – represented to the Court that it was still undecided as to whether or not Dr. Feifel would appear to testify:

> Your Honor, let me just say this is a little unconventional. There is nothing in his expert report about this. I think it's cited in their brief. **If they want to quote the deposition testimony from Dr. Feifel, I don't know whether we're going to be bringing him here to testify.** It's in the record already and the only thing I would say is if the deposition testimony is going to be referenced, then the errata sheet should be there as well, but otherwise it seems to me it's inappropriate to have this witness testifying about it.

(D.I. 150 at pp. 866-67) (emphasis added). This representation was made prior to Plaintiffs' opening of their responsive case regarding invalidity and Plaintiffs were entitled to call him up to the time that they closed their case.

To represent that Defendants "were notified that Dr. Feifel would not be called" (D.I. 166 at 3) on December 7th while representing to the Court on December 12th that Plaintiffs did not even know whether Dr. Feifel would be called is simply incongruous. Defendants' did not know until Plaintiffs closed the second portion of their case whether or not Dr. Feifel would appear live. Moreover, it was just after Plaintiffs closed their case that Defendants handed up their designations and noted that they would be willing to include Plaintiffs' counter-designations. (D.I. 152 at pp. 1428 – 1429).

For all the foregoing reasons, Defendants proffer of the Feifel designations are not untimely and should be admitted. At the very least, the portions of the Feifel designations that were cited in the pretrial brief are already of record by acknowledgement of counsel

during trial.  As noted above, with one exception, Defendants do not object to Plaintiffs

counter-designations if Defendants proffered testimony is admitted.


**B.**     **The Objected to Testimony and Exhibits of Dr. Mayersohn Is Admissible as Merely Explaining the Meaning of a Term Used in Exhibits and Testimony that Are Not The Subject of an Objection.**

The second evidentiary objection maintained by Plaintiffs concerns two

demonstratives used by Dr. Mayersohn (*i.e.*, DTX 1196 and 1197) and the associated trial

testimony (*i.e.*, D.I. 150 at pp. 818 – 820:12).  Plaintiffs assert that the demonstratives and

testimony constituted an unfair surprise and therefore should be excluded.  (*See* D.I. 166 at

pp. 4-5.)  These demonstratives and testimony were simply provided by Dr. Mayersohn as

an explanation using demonstrative exhibits of what scientists mean when they use the

term "clockwise hysteresis."

Beginning on the first day of trial, there was testimony concerning clockwise

hysteresis and acute tolerance.  (*See, e.g.*, D.I. 148 at p. 101 *et seq.*).  The demonstratives

and testimony at issue here are just an explanation of this phenomenon to assist the trier of

fact – they do not concern the occurrence of clockwise hysteresis upon administration of

methylphenidate.  Moreover, Plaintiffs have ***not*** objected to the exhibits or testimony

concerning the actual documented occurrence of clockwise hysteresis with

methylphenidate.  (*See, e.g.*, D.I. 150 at p. 840 (regarding the 1991 Perel abstract, DTX

153,  which reports the occurrence of clockwise hysteresis in the treatment of hyperactive

children with methylphenidate)).  Likely this is because Dr. Mayersohn specifically noted

the Perel abstract in his deposition testimony in this case and because there had already

been trial testimony regarding DTX 153 earlier in the trial. (*See, e.g.*, D.I. 148 at p.102 *et seq.*).

Dr. Mayersohn's explanation of what the term "clockwise hysteresis" means simply explains a term used earlier in the trial and in an abstract that he testified about during his deposition that has been admitted without objection into evidence. (*See* D.I. 150 at p. 818: "This was a graph I suggested to counsel to make it more understandable for the Court. This was not to confuse or support my argument. My argument is straight, it's just to help you understand.") Such testimony and demonstrative exhibits are typically admitted. There is no requirement that every demonstrative that will be used be included in an expert report, nor is there a requirement that the expert report constitute a detailed direct examination. What is required is notice of the expert's opinions and the bases for those opinions. Amplification of what a term means in an admitted exhibit is permissible testimony, and neither the testimony nor the related demonstrative should be excluded.

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' evidentiary objections maintained in the Opening Brief should be overruled. All of the Feifel designations should be admitted and Plaintiffs' counter-designations, except pages 112:24-113:23 which is irrelevant, also should be admitted into evidence. In the alternative the pages from Dr. Feifel's deposition cited in Defendants' Pretrial submissions should remain in evidence. Dr. Mayersohn's

demonstrative exhibits and testimony regarding them should be admitted into evidence.

Respectfully Submitted,

Dated: January 30, 2008

/s/ William J. Cattie, III  #953
RAWLE & HENDERSON LLP
William J. Cattie, III, Esq.
I. D. No. 953
300 Delaware Avenue, Suite 1015
P. O. Box 588
Wilmington, DE 19899-0588
302-778-1200
Facsimile:  302-778-1400

*Of Counsel:*

*Attorneys for Defendants*
*Andrx Pharmaceuticals, LLC and*
*Andrx Corporation.*

John W. Bateman
C. Kyle Musgrove
Robert F. Vroom
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
202-220-4200

2281610-1