# EXHIBIT F

**Defendants' Proposed Supplemental Findings Of Fact And Conclusions Of Law Regarding The '129 Patent**

## I. INTRODUCTION

### A. Claims of the '129 Patent

1264. Claim 1 of the '129 patent claims a method for treating ADD or ADHD in a patient wherein "a pharmaceutically acceptable composition" containing methylphenidate and a pharmaceutically acceptable carrier is administered, resulting in substantially ascending methylphenidate plasma drug concentrations over about 8 hours following administration:

> A method for treating Attention-Deficit Disorder or Attention-Deficit Hyperactivity Disorder in a patient, wherein the method comprises administering a pharmaceutically acceptable composition comprising methylphenidate and a pharmaceutically acceptable carrier to said patient in a manner that achieves a substantially ascending methylphenidate plasma drug concentration over a time period of about 8 hours following said administration.

(DTX 3).

1265. Claim 1 of the '129 patent is the only independent claim asserted in Plaintiffs' Post-trial Findings of Fact and Conclusions of Law. The only asserted dependent claims (claims 4 to 6) in Plaintiffs' Post-trial Findings of Fact and Conclusions of Law provide limitations relating to the amount of methylphenidate included in the composition, but do not limit the type of composition or dosage form used. (*See* DTX 3).

1266. Claims 4-6 read:

> 4. A method of claim 1 wherein said composition comprises about 18 mg of methylphenidate.
>
> 5. A method of claim 1 wherein said composition comprises about 36 mg of methylphenidate.
>
> 6. A method of claim 1 wherein said composition comprises about 54 mg of methylphenidate.

(DTX 3).

### B. The Court's Claim Construction

1267. The Court adopted all of Alza's proposed claim constructions.

1268. The Court construed the following terms:

1. The phrases **"pharmaceutically acceptable composition"** and **"dosage form,"** as used in the claims of the '129 patent and the '373 patent, mean "a pharmaceutical composition that includes a dose of methylphenidate;"

2. The phrase **"an ascending release rate over an extended period of time,"** as used in the claims of the '373 patent, means "a release of methylphenidate from the dosage form wherein the amount released in a periodic interval is increased over the amount released during the immediately preceding periodic interval starting at t=0 and continuing through at least the midpoint of the $T_{90}$ and for at least three hours. The release rate is as determined by an appropriate in-vitro dissolution test. The ascending release rate does not include release of drug from any immediate-release drug coating that may be applied to the dosage form;"

3. The term 'substantially' in the phrase **"substantially ascending methylphenidate plasma drug concentration,"** as used in the claims of the '129 patent and the '373 patent, means "approximately. Thus, a substantially ascending profile is one in which the plasma concentration of methylphenidate generally rises over approximately [X] hours, but may include a slight dip;"

4. The term 'about' in the phrase **"over a time period of about [X] hours following said administration,"** as used in the claims of the '129 patent and the '373 patent, means "approximately. Thus, a substantially ascending profile is one in which the plasma concentration of methylphenidate generally rises over approximately [X] hours, but may include a slight dip."

(D.I. 130) (emphasis in original).

### II. FINDINGS OF FACT THAT THE ASSERTED CLAIMS OF THE '129 PATENT ARE NOT INFRINGED

1269. The asserted claims are method of use claims. Andrx will not directly treat patients, so only inducement and contributory infringement are relevant here.

1270. Claim 1 of the '129 patent is similar to, but broader than, claim 7 of the '373 patent. Like claim 7 of the '373 patent, claim 1 of the '129 patent requires that there

be a "substantially ascending methylphenidate plasma drug concentration," but unlike the claims of the '373 patent, the '129 patent does not require the use of an "an ascending release rate."

1271.  As provided for the "substantially ascending methylphenidate plasma drug concentration" requirement in claim 7 of the '373 patent, the use of Andrx's proposed ANDA products will not result in any meaningful occurrence of a "substantially ascending methylphenidate plasma drug concentration." (*See* D.I. 182 at ¶¶ 601-630). Thus, Andrx's proposed ANDA products do not contributorily or induce infringement of claim 1 of the '129.

1272.  Claims 4 to 6 of the '129 patent require methylphenidate to be dosed in 18 mg, 36 mg, or 54 mg amounts, respectively. (DTX 3).

1273.  While Andrx's proposed ANDA products include a dosage strength for 27 mg, there is no claim to a 27 mg dosage strength.

1274.  Because claims 4-6 of the '129 patent depend from claim 1, each incorporates all of the limitations of claim 1.

### III. CONCLUSIONS OF LAW THAT THE ASSERTED CLAIMS OF THE '129 PATENT ARE NOT INFRINGED

1275.  For at least the same reasons that the claims of the '373 patent are not contributorily infringed or infringed by inducement, the claims of the '129 patent are also not infringed and Plaintiffs are not entitled to relief. (*See* D.I. 182 at ¶¶ 631-668).

1276.  Also, even assuming there is some small amount of actual infringement by the end users, that small amount of infringement does not entitle Plaintiffs to any relief here. (*See* D.I. 182 at ¶¶ 664-668).

## IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT CLAIM 1 OF THE '129 PATENT IS ANTICIPATED

1277. Defendants have already proposed findings of fact and conclusions of law as to why claim 1 of the '129 patent is anticipated. (*See* D.I. 182 at ¶¶ 1244-1263).

## V. FINDINGS OF FACT THAT THE ASSERTED CLAIMS OF THE '129 PATENT ARE OBVIOUS

1278. Because claim 1 of the '129 patent is broader than claim 7 of the '373 patent, claim 1 of the '129 patent would have been obvious to one of ordinary skill in the art. Defendants have already proposed findings of fact as to why claim 1 of the '129 patent would have been obvious. (*See* D.I. 182 at ¶¶ 669-854).

1279. Claims 4 to 6 of the '129 patent require methylphenidate to be dosed in 18 mg, 36 mg, or 54 mg amounts, respectively. (DTX 3; *see also* Mayersohn Opening Expert Report (Exhibit D to D.I. 189) at ¶ 101).

1280. While no piece of prior art specifically indicates the use of the specific dosage amounts of 18 mg, 36 mg, or 54 mg of methylphenidate, each of these doses is merely a selection of a dose within the range disclosed in the prior art. (*See* Mayersohn Opening Expert Report (Exhibit D to D.I. 189) at ¶ 102, Mayersohn Rebuttal Expert Report (Exhibit E to D.I. 189) at ¶ 75).

1281. The prior art immediate release doses were provided in three amounts: 5 mg, 10 mg and 20 mg. (DTX 630 at Table 1). These doses were prescribed for ingestion two to three times-a-day; thus the typical dosage range was from 10 mg to 60 mg of methylphenidate per day. (Mayersohn Rebuttal Expert Report (Exhibit E to D.I. 189) at ¶ 75).

1282. There is no evidence that the selection of a dose of 18 mg, 36 mg, or 54 mg of methylphenidate (each of which fall within the prior art's dosage range of 10 mg to

60 mg of methylphenidate per day) impart any special properties. Indeed, one typically would expect increased efficacy from increased amounts of drug. Thus, claims to a dosage form that provides a daily release of 18 mg, 36 mg, or 54 mg or methylphenidate would have been obvious to one of ordinary skill in the art. (*See* Mayersohn Opening Expert Report (Exhibit D to D.I. 189) at ¶¶ 99-102, Mayersohn Rebuttal Expert Report (Exhibit E to D.I. 189) at ¶ 75).

### VI. CONCLUSIONS OF LAW THAT THE ASSERTED CLAIMS OF THE '129 PATENT ARE OBVIOUS

1283. A claim is invalid if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art to which the subject matter pertains. 35 U.S.C. § 103(a).

1284. The claims of the '129 patent are obvious. (*See also* D.I. 182 at ¶¶ 855-883).

### VII. FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT THE ASSERTED CLAIMS OF THE '129 PATENT ARE NOT ENABLED AS A MATTER OF LAW

1285. Defendants have already proposed findings of fact and conclusions of law as to why claim 1 of the '129 patent is not enabled as a matter of law. (*See* D.I. 182 at ¶¶ 884-975).

1286. The other asserted dependent claims (claims 4-6) provide limitations on the amount of methylphenidate included in the composition but do not limit the type of composition used. (*See* Needham Expert Report (Exhibit B to D.I. 189) at ¶¶ 32-33).

1287. Claims 1 and 4-6 of the '129 patent are not limited to the use of an ascending release rate – the substantially ascending methylphenidate plasma drug

concentration can be accomplished by using an ascending release rate or any other approach. If the scope of these claims are as broad as the Plaintiffs' argued and the Court adopted, then claims 1 and 4-6 of the '129 patent are not enabled for their full scope for at least the same reasons that claim 7 of the '373 patent is not enabled. (*See* Needham Expert Report (Exhibit B to D.I. 189) at ¶¶ 111-141; *see also* D.I. 182 at ¶¶ 884-975).

### VIII. FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT THE ASSERTED CLAIMS OF THE '129 PATENT ARE NOT ENABLED

1288. Claims 4-6 of the '129 patent are not limited to the use of an "ascending release rate." For at least the same reasons that claim 1 of the '129 patent is not enabled, claims 4-6 are not enabled to their full scope. Defendants have already proposed findings of fact and conclusions of law as to why claim 1 of the '129 patent is not enabled to its full scope and cannot be practiced to its full scope without undue experimentation. (*See* D.I. 182 at ¶¶ 977-1178; *see also* Needham Expert Report (Exhibit B to D.I. 189) at ¶¶ 143-172).

### IX. FINDINGS OF FACT THAT THE ASSERTED CLAIMS OF THE '129 PATENT LACK WRITTEN DESCRIPTION

1289. In stark contrast to the very broad scope of the claims, the patents in suit describe only one type of dosage form that works to achieve the claimed results, *i.e.*, an osmotic dosage form. (*See* Needham Expert Report (Exhibit B to D.I. 189) at ¶¶ 179-182). Both parties' formulation experts, Dr. Needham and Dr. Davies, agreed that osmotic dosage forms are unique. (12/12/07 Trial Tr. at 697:24-698:17, 710:8-711:5 [Needham]; 12/14/07 Trial Tr. at 1221 5-24 [Davies]). Thus, the disclosure of osmotic dosage forms does not indicate to one of ordinary skill in the art that the inventors were in possession of dosage forms other than osmotics that would provide the claimed substantially ascending plasma profiles. (*See* D.I. 182 at ¶¶ 1179-1186).

## X.   CONCLUSIONS OF LAW THAT THE ASSERTED CLAIMS OF THE '129 PATENT LACK WRITTEN DESCRIPTION

1290.  The evidence is consistent with the failure of the specification of the '129 patents to describe any non-osmotic dosage form that could achieve the claimed substantially ascending plasma profile. (*See* Needham Expert Report (Exhibit B to D.I. 189) at ¶¶ 179-182).

1291.  A single described species, *i.e.*, osmotic dosage forms, simply does not evidence possession of the full breadth of the claims.  Therefore, the asserted claims of the '129 patent are invalid for failure of an adequate written description. (*See* D.I. 182 at ¶¶ 1187-1198).